IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 17-20 |
| BOBBY LEON COOK, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

CONTI, Senior District Judge

**I.     Introduction**

Currently pending before the court is a motion to modify sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed by defendant Bobby Leon Cook ("Cook"). (ECF No. 109.) On June 18, 2019, this court sentenced Cook to a term of imprisonment of 100 months at each of counts one and two of the indictment, to be concurrently served, for a total term of imprisonment of 100 months. (ECF No. 102 at 1-2.) In the presentence investigation report ("PIR") filed in this case, it was noted that Cook was being detained in state custody in the Court of Common Pleas of Washington County at Docket No. 2585-2009 because of an alleged violation of his parole (the "parole violation") based upon the conduct that formed the basis of the indictment in this case. The court at the time of sentencing was advised that Cook was writted out of state custody and would be returned to state custody after the sentencing hearing. Under those circumstances, the parties and this court expected that he would be sentenced on the violation of his state parole and this court could run—in whole or in part—any sentence imposed in this case concurrently with any sentenced to-be-imposed for the state parole violation. Cook requested this court run his federal sentence concurrently with any sentence to be imposed for his state parole violation. The court

granted Cook's request in part and ordered that twelve months of the 100-month term of imprisonment imposed in this case shall concurrently run with "any term of imprisonment imposed for the parole violation in the Court of Common Pleas of Washington County at Docket No. 2585-2009." (Id. at 2.)

Unbeknownst to the government, counsel for Cook, and the court at the time of sentencing, however, the Pennsylvania Board of Probation and Parole (the "state parole board") had lifted the state parole detainer after Cook was indicted in this case, but before he pleaded guilty, and issued a second state parole detainer. Cook, therefore, came into primary federal custody before he pleaded guilty in this case. He was not returned to state custody after sentencing in this case and is unlikely to be brought before the state parole board to be sentenced on his parole violation until *after* he serves the 100-month term of imprisonment imposed by this court. In other words, Cook will not serve any portion of the 100-month sentence imposed upon him in this case concurrently with the yet-to-be-imposed sentence for the state parole violation. Counsel for Cook and counsel for the government advised the court that they did not learn that the first state parole detainer was lifted and he was in primary federal custody until after the appeal period expired in this case. (ECF No. 109 ¶ 10.)

Cook argues that in light of the parties' mutual mistake of fact with respect to the first state parole detainer, this case presents "extraordinary and compelling reasons" for the court to modify Cook's sentence under § 3582(c)(1)(A). The government in opposition argues that the "extraordinary and compelling reasons" provided for in § 3582(c)(1)(A) are limited to the reasons set forth by the United States Sentencing Commission in the commentary to U.S.S.G. § 1B1.13, and this case does not fall within the ambit of the guidelines. Cook argues that because of the parties' erroneous representations to the court at the time of sentencing that he would be returned

to state custody after the sentencing hearing, he will serve a longer period of incarceration than intended by this court and he will be prohibited from participation in programs within the BOP while he serves his federal sentence. Cook has, therefore, probably been prejudiced by the parties' mutual mistake of fact.

For the reasons set forth in this opinion, Cook is not entitled to relief under § 3582(c)(1)(A). Cook's may be entitled to relief under 28 U.S.C. § 2255 if he can show that his counsel at the time of sentencing failed to act reasonably by not verifying that the first state parole detainer was still in effect and the outcome of the sentencing would have been different had his counsel acted in a reasonable manner. As explained more fully herein, the motion to modify sentence must be denied without prejudice to Cook's ability to file a timely motion under § 2255.

## II.     Procedural History and Factual Background

On November 13, 2015, the state parole board reported that Cook absconded from state parole supervision for a conviction sustained in the Court of Common Pleas of Washington County at Docket No. 2585-2009. (ECF No. 113 ¶ 3.) The state parole board issued an absconder warrant for his arrest. (Id.) On March 30, 2016, Cook was arrested on new state charges. (ECF No. 87 ¶ 47.) Cook was detained for failure to post bond on the new state charges, and the state parole board filed a detainer against him based upon his violation of parole at Docket No. 2585-2009. (ECF No. 113 ¶ 3.) On April 12, 2016, additional state charges were filed against Cook. (ECF No. 87 ¶ 48.) As of that date, Cook was being detained because he did not post bond with respect to the state charges filed against him on March 30, 2016, and April 12, 2016, and because the state parole board issued a detainer against him for violating his parole. (ECF No. 113 ¶ 3.)

On January 25, 2017, a federal grand jury returned a two-count indictment against Cook in the above-captioned criminal action charging him with: (1) possession with intent to distribute

heroin, a Schedule I controlled substance, on or about March 30, 2016, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("count one"); and (2) possession of a firearm and ammunition by a convicted felon, on or about March 30, 2016, in violation of 18 U.S.C. § 922(g)(1) ("count two"). (ECF Nos. 1, 2.) On January 27, 2017, this court issued a writ of habeas corpus ad prosequendum for Cook to make an initial appearance on the charges filed in this case. On February 28, 2017, Cook made an initial appearance before this court, (ECF No. 13), entered a not guilty plea to each of counts one and two of the indictment, (ECF No. 15), and waived his right to a detention hearing before the magistrate judge, (ECF No. 13). It does not appear from this court's docket that Cook was ever returned to state custody following his initial appearance before this court. See (ECF No. 103.)

On April 3, 2017, the state charges filed against Cook on March 30, 2016, and April 12, 2016, were nolle prossed in lieu of the federal prosecution in this case. (ECF No. 87 ¶¶ 47-48.) According to a joint submission by Cook, the government, and probation office, on April 19, 2017, the first state parole detainer lodged against Cook was lifted and a new state parole detainer permitting Cook's detention beyond the January 7, 2019 maximum state parole date was issued that same date. (ECF No. 113 ¶ 2.) Based upon the foregoing, it is the court's understanding that beginning on April 19, 2017, Cook was in primary federal custody rather than primary state custody.

On January 3, 2019, Cook pleaded guilty to each of counts one and two of the indictment in this case. (ECF No. 80.) A presentence investigation was conducted by the probation office, and on March 21, 2019, the probation office filed a presentence investigation report ("PIR"). (ECF No. 87.) The PIR provided that on March 30, 2016, a detainer was issued by the state parole board with respect to the 2009 parole violation. (Id. at 2, 10 ¶ 39.) The PIR specifically provided: "[A]s a

4

result of the instant federal offense, the defendant currently has violation proceedings pending, and the detainer issued on March 30, 2016, remains in effect." (Id. ¶ 39.) According to the information provided by the parties and probation office on April 20, 2020, however, the information provided in the PIR was incorrect. The state parole detainer issued on March 30, 2016, was lifted on April 19, 2017, and a new state parole detainer was issued on the same date. (ECF No. 113 ¶ 2.) The PIR did not include the information that Cook was in primary federal custody on the date the PIR was filed with the court.

Cook filed objections to the PIR, but did not object to the information about the first state parole detainer listed on page 2 of the PIR. (ECF No. 89.) On June 11, 2019, Cook filed a sentencing memorandum in which he requested the court to "impose its sentence to run concurrent with any sentence the Pennsylvania Parole Board imposes for the Pennsylvania parole violation." (ECF No. 96 at 3.) Cook explained:

> A detainer was placed on Mr. Cook by the Pennsylvania Board of Probation and Parole on March 30, 2016, prior to the indictment in the above matter. As such, the state has primary jurisdiction over Mr. Cook…. As a result, following the imposition of sentence in the within matter, Mr. Cook should be remanded to the state to answer for his parole violation.
>
> Mr. Cook requests this Court to run any term of incarceration to be imposed in this case concurrent with any term of incarceration he is ordered to serve as a result of the violation of his state parole.

(Id. at 3.)

The court addressed Cook's request for a concurrent sentence at the time of sentencing. (H.T. 6/18/2019 (ECF No. 106) at 23-26.) Counsel for Cook represented to the court that the first state parole detainer was currently lodged against Cook; neither the government nor the probation officer disagreed with that representation made to the court or told the court that Cook was in primary federal custody because the state parole board had lifted the first state parole detainer and

5

issued a second state parole detainer. Indeed, the government's counsel stated that he had to "writ [Cook] to get him [to the sentencing hearing]" and "[o]nce…[the] sentence…[was] imposed,…[he would] go back to the state to begin to serve the state sentence first…." (Id. at 24.) The court granted in part Cook's request for a concurrent sentence; it sentenced defendant to, among other things, a term of imprisonment of 100 months at each of counts one and two, for a total term of imprisonment of 100 months, and ordered that 12 months of the 100-month sentence imposed in the above-captioned case concurrently run with any term of imprisonment imposed for the state parole violations. (Id. at 41.)

On June 21, 2019, a "Writ of Habeas Corpus ad Prosequendum as to BOBBY LEON COOK Returned Unexecuted" was filed on this court's docket. (ECF No. 103.) It provided: "Return Unexecuted Do Not Return to Washington Co. Probation & Parole detainers lifted." (Id. at 103.) The document was signed by a deputy United States Marshal and dated June 18, 2019. (Id.)

On July 18, 2019, the court—after being advised that Cook remained in federal custody following the imposition of sentence in this case—held a telephonic status conference with the government, Cook's counsel, and Cook. The court ordered the transcript of the sentencing hearing. On September 10, 2019, the court held a second telephonic status conference. Cook's counsel advised the court that he would be filing a motion under the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 requesting the court to modify Cook's sentence.

On September 18, 2019, Cook filed the pending motion to modify sentence. (ECF No. 109.) On October 18, 2019, the government filed its response in opposition to the motion. (ECF No. 110.) On April 17, 2020, the court determined it required additional information to decide the pending motion to modify sentence. The court ordered the parties and probation officer to meet

and confer and file with the court a joint notice setting forth: (1) the date and time the first state parole detainer was lifted; (2) whether Cook's detention in state court on March 30, 2016, was the result of the parole detainer issued on the same date; and (3) what effect, if any, the state charges being nolle prossed on April 3, 2017, had on the state parole detainer. On April 20, 2020, the parties filed a joint notice with the court addressing the foregoing three issues. (ECF No. 113.) On April 23, 2020, the court ordered the probation office to file with the court copies of the state court parole detainers issued on March 30, 2016, and April 17, 2016. (EF No. 114.) On April 24, 2020, the probation office filed the state court parole detainers with the court. (ECF No. 115.)

The motion to modify sentence having been fully briefed is now ripe to be decided by the court.

### III. Discussion

#### A. Applicable Law

Cook seeks relief under § 3582(c)(1)(A)(i), which the Third Circuit Court of Appeals has referred to as the "'compassionate release'" provision of 18 U.S.C. § 3582(c)(1)(A)." United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (per curiam). Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case--
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Prior to the enactment of the First Step Act on December 21, 2018, § 3582(c)(1)(A) provided that only the Director of the Bureau of Prisons ("BOP") could file a motion for a sentence reduction under § 3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id. The court in Ray explained that under the amended version of § 3582(c)(1)(A):

> [w]hen requesting a reduction of their term of imprisonment for "compelling and extraordinary reason," or "compassionate release," a federal inmate must comply

8

Case 2:17-cr-00020-JFC   Document 116   Filed 04/24/20   Page 9 of 15

with the requirements of 18 U.S.C. § 3582(c)(1)(A), including the full exhustion of all administrative rights to appeal the BOP's refusal to bring such a claim or after "lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Id. The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan, 789 F. App'x at 925 (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). Pursuant to U.S.S.G. § 1B1.13(1)(B)(2), the court must also consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While the court of appeals recognized the split of authority in Handerhan, it did not resolve the issue. Id.

Courts that hold that district courts now have the discretion to grant compassionate release based upon compelling and extraordinary circumstances *other* than those specifically enumerated in the commentary to § 1B1.13 typically rely upon two rationales. First, Congress' stated intent in amending § 3582 via the First Step Act was to "expand the use of compassionate release sentence reductions under § 3582(c)(1)(A)." United States v. Young, No. 2:00-CR-00002-1, 2020 WL

9

1047815, at *5 (M.D. Tenn. Mar. 4, 2020) (citing First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, co-sponsor of the First Step Act, noting that its purpose was to "expand compassionate release" and "expedite[ ] compassionate release applications"). Under those circumstances, courts reason that "'the only way direct motions to district courts would *increase* the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute extraordinary and compelling.'" United States v. Crinel, No. CR 15-61, 2020 WL 955054, at *3 (E.D. La. Feb. 27, 2020) (quoting United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (emphasis added)). Second, courts reason that the commentary to § 1B1.13 is no longer binding on courts analyzing what constitutes "compelling and extraordinary" reasons under the statute because the commentary now conflicts with § 3582(c); indeed, the commentary "presumes that a compassionate release sentence reduction may only be granted 'upon motion' by the BOP Director." Young, 2020 WL 1047815, at *6 (citing Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.")).[1]

---

[1]  A third reason to hold that courts after the enactment of the First Step Act have independent authority to determine whether "extraordinary and compelling" reasons exists to warrant a defendant's compassionate release was discussed by the court in United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019). The court applied the "rule of lenity" and explained:
> Applying the rule of lenity, U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court. The rule of lenity mandates that when two rational readings of a statute are possible, the one that treats the defendant less harshly prevails,8 See McNally v. United States, 483 U.S. 350, 359–60, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), because when statutes are unclear, "the

Other courts have "concluded to the contrary, either simply presuming or actually holding that the current policy statement is binding even after passage of the First Step Act." Young, 2020 WL 1047815, at *6 (collecting decisions); Fox, 2019 WL 3046086, at *2 (collecting decisions). For example, the court in United States v. Shields, No. 12-CR-00410-BLF-1, 2019 WL 2359231 (N.D. Cal. June 4, 2019), held it was bound to follow the commentary to § 1B1.13 and the court did not have discretion to find compelling and extraordinary reasons for issuing compassionate release other than based upon the defendant's medical condition, age, or family circumstances. The court explained: "[the defendant] has not cited, and the Court has not discovered, any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments." Id. at *4. The court noted in Young, however, that "in most of these cases [in which the courts found they were bound to follow the commentary to § 1B1.13,] the moving defendants did not argue the existence of any extraordinary or compelling reasons for release aside from their age or medical condition." Young, 2020 WL 104,7815, at *6.

### B. Analysis

Here, this court need not decide whether it is bound by the commentary to § 1B1.13 or it

---

consequences should be visited on the party more able to avoid and correct the effects of shoddy legislative drafting," Scalia & Garner, supra, at 299. That principle matters because the less the courts insist on precision in statutes relating to punishments, "the less the legislature will take the trouble to provide it." Id. at 301. Thus, the correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements "at any time," Mistretta v. United States, 488 U.S. 361, 394, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)—is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.

Id.

11

has independent discretion to determine whether other "extraordinary and compelling" reasons exist in this case to resolve Cook's motion for a sentence reduction. Even courts that found they had independent authority to determine whether "extraordinary and compelling reasons" warrant a defendant's premature release from imprisonment looked to Congress' intent and constrained their consideration to "'cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.'" Young, 2020 WL 1047815, at *3 (quoting S. Rep No. 98-225, at 55-56, 1983 WL 25404 (1983)). For example, in Young, the court found "extraordinary and compelling reasons" existed under § 3582(c)(1)(A) because Congress reduced the statutory maximum term of imprisonment for the defendant's crime of conviction and the defendant was 72 years old. Id. at *8-9. The court recognized, however, that the defendant's rehabilitation in jail—standing alone—was not a "extraordinary and compelling reason" upon which the defendant may be released. Id. at *9; see United States v. Maumau, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he court concludes that a combination of factors—Mr. Maumau's young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce Mr. Maumau's sentence."); United States v. Brown, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019) (holding the defendant's "exemplary behavior…botched surgery while incarcerated[,]…that his daughter [was]…without a parent,…[and] that he faces a sentence far longer than he would ever receive under modern law" did not constitute "extraordinary and compelling reasons" for compassionate release); United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *8 (M.D.N.C. June 28,

2019) (finding "extraordinary and compelling reasons" warranted the defendant's compassionate release because she had "invasive breast cancer and…received grossly inadequate treatment for her condition while serving her sentence in BoP custody[,]" which placed her life in risk); Fox, 2019 WL 3046086, at *3 ("I conclude that those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release.").[2]

Cook did not cite and this court did not find any authority that suggests § 3582(c)(1)(A) is a source of authority for this court to reduce a sentence based upon a mutual mistake of fact presented to the court at sentencing. In other words, the court is not persuaded that the parties' mutual mistake of fact with respect to whether a parole detainer was lodged against Cook at the time of sentencing is an "extraordinary and compelling reason" under § 3582(c)(1)(A) that warrants the issuance of *compassionate release* in this case.

The court is sympathetic to Cook's situation in this case. The court's authority to amend a sentence after it is imposed, however, is limited, and § 3582(c)(1)(A) does not afford him the relief he seeks. Cook may be entitled to relief under 28 U.S.C. § 2255[3] if he files a § 2255 motion before

---

[2] In these decisions, the courts were considering requests for *immediate* compassionate **release** from imprisonment, rather than a request for a reduction in a term of imprisonment based upon the parties' mutual mistake of fact that would change a date far into the future on which the defendant would be released.

[3] To support a claim that "counsel's assistance was so defective as to require reversal of conviction," Strickland v. Washington, 466 U.S. 668, 687 (1984), a petitioner must make two showings. "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. Dist. Att'y of the Cnty. of Allegh., 672 F.3d 198, 210 (3d Cir.2012) (citing Strickland, 466 U.S. at 687). "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness.... The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington

the one-year statute of limitations expires on June 19, 2020,[4] and can show his right to counsel guaranteed by the Sixth Amendment to the United States Constitution was violated. The crucial issue will be whether his counsel was ineffective by failing to conduct a reasonable investigation about whether Cook was in primary state or federal custody at the time of sentencing. As noted in this opinion, Cook has probably been prejudiced by the parties' mutual mistake of fact with respect to whether Cook was in primary state or federal custody at the time of sentencing. At this stage, however, the court cannot prejudge whether a § 2255 motion or a motion filed under any other

---

v. Richter, 562 U.S. 86, 104 (2011)). "'With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Ross, 672 F.3d at 210 (quoting Richter, 562 U.S. at 104). In other words, petitioner must show that there is a reasonable probability that his counsel's errors resulted in his conviction. See Glover v. United States, 531 U.S. 198, 203 (2001).

[4]     Cook may also argue that the one-year statute of limitations was tolled under 28 U.S.C. § 2255(f). Section 2255(f) sets forth the applicable statute of limitations period for the filing of a § 2255 motion:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255(f). The court does not opine whether a tolling argument would be successful in this case.

source of law would be successful in obtaining the relief Cook seeks.

**IV.     Conclusion**

Courts refer to § 3582(c)(1)(A)(i) as the "compassionate release" provision of the statute; indeed, Congress' amendments to § 3582(c)(1)(A)(i) via the First Step Act were intended to increase the use of compassionate release. Cook, however, does not seek compassionate release; rather, he seeks a reduction of sentence in light of a mutual mistake of fact the parties presented to the court at the time of sentencing. He is not, therefore, entitled to relief under § 3582(c)(1)(A). Cook's motion to modify sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 109) will be denied without prejudice to Cook's ability to file a timely motion under § 2255.

An appropriate order will be entered.

BY THE COURT,

Dated: April 24, 2020

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge